UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

BILL HATTER,

        Plaintiff,

        v.

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security
Administration,

        Defendant.

Case No. 3:12-CV-851 JVB-CAN

**OPINION AND ORDER**

On December 19, 2012, Plaintiff Bill Hatter filed his Complaint in this Court, challenging the decision by Defendant Commissioner Carolyn W. Colvin denying his applications for Disability Insurance Benefits and Supplemental Security Income. Hatter requests this Court to enter judgment in his favor or remand this matter to the Commissioner. For the reasons stated below, the Court AFFIRMS the Commissioner's decision.

**A. Procedural Background**

Hatter applied for Disability Insurance Benefits on October 22, 2009, and Supplemental Security Income on June 17, 2010. (R. at 20). In both instances, Hatter alleged a disability onset date of November 16, 2008. (*Id.*). These claims were denied initially and again upon

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is automatically substituted for Michael J. Astrue as the named Defendant.

reconsideration. (*Id.*). Hatter requested a hearing before an administrative law judge ("ALJ"), which was held on October 4, 2011. (*Id.*). In an opinion dated October 17, 2011, the ALJ found that Hatter met the insured status requirements of the Social Security Act through December 31, 2013, and that he had not engaged in substantial gainful activity since November 16, 2008. (R. at 22). Furthermore, the ALJ found that Hatter had the severe impairment of degenerative disk disease of the spine. (*Id.*). The ALJ held, however, that Hatter did not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Additionally, the ALJ found that Hatter retained the residual functional capacity ("RFC") to perform a reduced range of sedentary work. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a). Specifically, the ALJ found that Hatter can occasionally lift and carry up to ten pounds, sit, stand, or walk for one hour, and that he must adjust his position for five minutes after sitting for one hour. (R. at 20). The ALJ determined that Hatter could not use his right leg to operate foot controls, nor could he climb ladders, ropes, or scaffolds, or drive, operate machinery, or be exposed to unprotected heights, exposed flames, large bodies of water, or unguarded hazardous machinery. (*Id.*). Hatter could, however, occasionally climb ramps and stairs, as well as balance, stoop, kneel, crouch, and crawl. (*Id.*). Based on these findings, the ALJ determined that Hatter was not disabled within the meaning of the Social Security Act. (R. at 30).

Accordingly, the ALJ issued a decision denying Hatter's application for benefits. (R. at 30). The Appeals Council denied Hatter's request for review. (R. at 5). As a result, the ALJ's opinion became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481; *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005). Hatter then filed the present action.

**B. Factual Background**

**(1) Medical Evidence**

Hatter was born in 1973, and was thirty-eight years old at the time the ALJ denied his application for disability benefits. He has a high school education and past relevant work as a welder. (R. at 40). Hatter suffers from lower-back pain that also travels into his legs. In 2004, Hatter began treatment with his family physician, Dr. Rex Allman, complaining of chronic lower back pain stemming from a previous accident at work. (R. at 332). Dr. Allman diagnosed lumbosacral strain with chronic back pain and stabilized Hatter's back pain with prescription Adderall. (R. at 335, 342). Treatment notes indicate that Hatter's back pain was well-controlled with the use of Adderall. (R. at 332, 333–37, 338–40, 343). At a March 27, 2009, follow-up with Dr. Allman, Hatter stated that he "fe[lt] well with no complaints." (R. at 472).

Hatter saw Dr. Allman again on March 6, 2010. (R. at 470). He reported experiencing intermittent back pain and pain down his legs that worsened with prolonged standing or sitting. (*Id.*). Dr. Allman diagnosed Hatter with a lumbosacral sprain or strain. (R. at 471). In a handwritten note from that date, Dr. Allman opined that Hatter was unable to work due to chronic low back pain, which was made worse by sitting or standing for prolonged periods of time. (R. at 400). Dr. Allman also wrote a follow-up note on March 19, 2010, in which he stated that Hatter can only sit for sixty minutes, stand for ten to sixty minutes, walk two blocks, and that prolonged sitting or standing worsened Hatter's low back pain. (R. at 397). Dr. Allman also indicated that Hatter had difficulty traveling due to low back pain that radiated to both legs. (*Id.*).

On June 11, 2010, Dr. Allman referred Hatter to neurologist Salman Wali, M.D., for a neurological exam. (R. at 474). Dr. Wali noted Hatter's complaint of back pain, and that physical activity exacerbated the pain, and that the pain levels fluctuated throughout the day. (R. at 474,

3

476). Dr. Wali ordered an x-ray of Hatter's lower back, as well as an EMG and nerve conduction studies of his legs. (R. at 476). Dr. Wali saw Hatter again on June 25, 2010, and reported that the x-ray exam, EMG and nerve conduction studies were all normal. (R. at 472). Dr. Wali recommended that Hatter receive trigger point injections into his lower back. (R. at 473).

On October 26, 2010, Hatter established care with neurosurgeon Roman Filipowicz, M.D. (R. at 625). Dr. Filipowicz noted Hatter's history of back pain and ordered an MRI of his lower back. (*Id.*). The MRI showed a disc protrusion at the L4–L5 level of the spine, causing severe left neuroforamina stenosis and mild to moderate stenosis of the left aspect of the central canal, with likely nerve root compression at the L4–L5 level. (R. at 404). In a letter dated March 4, 2011, Dr. Filipowicz stated that the MRI revealed a "good-sized disc herniation" at the L4–L5 level, causing nerve root compression. (R. at 627). On March 15, 2011, Hatter elected to undergo an operation on his lower back. (R. at 418). Dr. Filipowicz performed a hemilaminotomy, a microdiskectomy at the L4–L5 level, and a nerve root decompression. (R. at 418–19).

Hatter followed-up with Dr. Filipowicz on April 1, 2011. (R. at 434). Dr. Filipowicz stated that Hatter still had back and leg pain, but it was better, and that he moved his legs "quite well." (*Id.*). At another appointment on May 6, 2011, Dr. Filipowicz noted that Hatter's strength and function improved after the operation, he was trying to not take pain medicine, was rehabilitating himself on his own, and was able to walk and complete small jobs around the house. (R. at 433). Dr. Filipowicz stated that Hatter still had bad days, and that his back problems made it difficult for him to return to work as a welder. (*Id.*). Dr. Filipowicz recommended that Hatter see either a physiatrist or physical therapist to receive a functional capacity evaluation. (*Id.*).

Hatter saw Dr. Filipowicz again on August 8, 2011. (R. at 533). Dr. Filipowicz noted that Hatter's back and legs hurt, and expressed concern that Hatter may have a problem with his disk if he did not improve. (*Id.*). Hatter underwent another MRI of his lumbar spine on August 16, 2011. (R. at 530). The MRI results showed a possible residual disk fragment in the same area as Hatter's first operation. (*Id.*).

(a) *Dr. Allman's Lumbar Spine Residual Functional Capacity Questionnaire*

On March 31, 2010, Dr. Allman completed a Lumbar Spine Residual Functional Capacity Questionnaire. (R. at 485). Dr. Allman diagnosed Hatter with a lumbosacral strain resulting in clinical findings of back stiffness, muscle spasm, and moderately decreased range of motion in the lower back. (R. at 485–86). He noted that Hatter would often experience pain that was severe enough to interfere with his attention and concentration. (R. at 486). Dr. Allman also stated that Hatter could walk for five blocks, sit and stand continuously for two hours at a time, and sit and stand for about two hours in an eight-hour workday. (R. at 487). He also opined that Hatter must walk every fifty minutes for ten minutes, and that he would need to take an unscheduled break every hour for ten minutes. (*Id.*). Additionally, Hatter could frequently lift and carry ten pounds or less. (R. at 488).

(b) *Dr. Filipowicz's Medical Source Statement*

In September 2011, Dr. Filipowicz completed a medical source statement assessing Hatter's ability to perform work-related activities. (R. at 537–41). He stated that Hatter could

5

only occasionally lift or carry up to ten pounds. (R. at 537). Sitting, standing, and walking were limited to one hour each during an eight-hour day. (R. at 538). Hatter could not use either foot to operate foot controls. (R. at 539). He was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling (R. at 541). Hatter was also limited to occasional exposure to unprotected heights, moving mechanical parts, and operation of a motor vehicle. (R. at 541).

**(2)** *Claimant's Testimony*

At his hearing before the ALJ on October 4, 2011, Hatter stated that he is disabled because he experiences constant lower back pain that travels into his legs.[2] (R. at 46). He said that physical activity makes the pain worse and that he took muscle relaxants and pain medicine to lessen his symptoms. (*Id.*). Furthermore, Hatter said that his pain level was generally constant from 2008 through 2011. (*Id.*). Hatter testified that he can only sit for fifteen to twenty minutes before needing to get up and change position. (R. at 49). He also said that he can only stand for fifteen to twenty minutes at one time, and that he needs to lie down and rest two to three times per day for fifteen minutes to one-half hour. (R. at 49–51). Hatter said that during the day he checks e-mail, helps with household chores, assists his children with their school work, and is able to drive himself to appointments. (R. at 50–52).

---

[2] While Hatter also alleged disability due to a depressive condition, the ALJ found that this was a non-severe impairment. (R. at 23–24). Furthermore, when the ALJ asked why Hatter is disabled, Hatter only mentioned his back pain, and does not raise the depressive condition as an issue on appeal. Therefore, the Court confines its analysis to Hatter's allegations regarding his lower back problems.

**C. Disability Standard**

In reviewing disability decisions of the Commissioner of Social Security, the district court must affirm the ALJ's decision so long as it is both supported by substantial evidence and free of legal error. 42 U.S.C. § 405(g) (2006); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence is more than a mere scintilla of such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This Court will not substitute its own opinion for that of the ALJ's or re-weigh the evidence; however, it will conduct a critical review of the evidence, considering both the evidence that supports and detracts from the decision. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Id.* The ALJ must explain his analysis of the evidence with specific detail and clarity so as to build a logical bridge from the evidence to the conclusion, but does not need to provide a "complete written evaluation of every piece of testimony and evidence." *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005) (quoting *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)). This includes addressing uncontradicted evidence that supports a claimant's disability. *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). The ALJ's legal conclusions are reviewed *de novo*. *Haynes*, 416 F.3d at 626.

Claimants will only qualify for benefits if they are found "disabled" under the Social Security Act. *See* 42 U.S.C. § 423(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Social Security regulations set forth a sequential five-part test to determine

whether a claimant is disabled. *See* 20 C.F.R. § § 404.1520, 416.920. This test requires the ALJ to consider whether: (1) the claimant is involved in substantial gainful activity; (2) the claimant has an impairment or combination of impairments that is severe; (3) the individual's impairment meets or medically equals an impairment listed in the Social Security regulations; (4) the impairment precludes the claimant from performing past relevant work; (5) the national economy lacks a significant number of jobs that the claimant has the capacity to perform. 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at steps one through four, after which the burden shifts to the Social Security Administration at step five. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

A finding of disability requires an affirmative answer at either step three or step five. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005). At step three, if the impairment meets or medically equals any of the severe impairments listed in the Social Security Regulations, the impairment is acknowledged by the Commissioner and the claimant is found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If, however, the claimant's impairment does not meet a listing, the ALJ will then assess the claimant's RFC to determine if the claimant can perform past relevant work, or other work available in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(iv)–(v), 416.920(a)(4)(iv)–(v).

**D. Analysis**

The primary issue this Court must resolve is whether the ALJ made a proper RFC determination. Hatter argues that the ALJ's opinion does not support his RFC determination because (1) the ALJ improperly discounted the medical opinion of Hatter's treating physicians,

8

Drs. Allman and Filipowicz, and (2) the ALJ improperly evaluated Hatter's credibility regarding his testimony about his pain symptoms.

The RFC is a judgment of an individual's ability to perform physical and mental work activities on a sustained basis, despite having limiting impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e); SSR 96-8p. In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record. 20 C.F.R. §§ 404.1520(e), 416.920(e). The record includes medical signs, diagnostic findings, the claimant's statements about the severity and limitations of medical impairments, statements and other information provided by treating or examining physicians and psychologists, third party witness reports, and any other relevant evidence in the record. *See Martinez v. Astrue*, No. 2:09-cv-62-PRC, 2009 U.S. Dist. WL 4611415, at *9 (N.D. Ind. Nov. 30, 2009); SSR 96-7p.

**1.** *The ALJ properly explained his reasons for discounting Dr. Allman's and Dr. Filipowicz's medical opinions.*

Hatter seeks a remand for further consideration of the medical opinions of Drs. Allman and Filipowicz. He contends that the ALJ erred by not assigning controlling weight to these opinions because they were his treating physicians. In determining the proper weight to accord medical opinions, the ALJ must consider factors including the claimant's examining and treatment relationship with the source of the opinion, the physician's specialty, the support provided for the medical opinion, and its consistency with the record as a whole. 20 C.F.R. §§ 404.1527(c), 416.927(c). A "treating source" is a medical professional who provides medical treatment or evaluation to the claimant and has or had an ongoing relationship with the claimant. 20 C.F.R. §§ 404.1527(c), 416.927(c). An ongoing relationship exists when the medical record

shows that the claimant saw the source frequently enough to be consistent with accepted medical practices for the treatment of the medical condition. 20 C.F.R. §§ 404.1527(c), 416.927(c).

An ALJ must give a treating physician's opinion controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and if it is consistent with other substantial evidence in the record. *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-8p; SSR 96-2p. Generally, ALJs weigh the opinions of treating sources more heavily because they are more familiar with the claimant's conditions and circumstances. *Clifford*, 227 F.3d at 870. A claimant is not entitled to benefits, however, merely because a treating physician labels him as disabled. *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). A medical opinion may be discounted if it is internally inconsistent or inconsistent with other substantial evidence in the record. *Clifford*, 227 F.3d at 870. While ALJs are not required to award a treating physician's opinion controlling weight, they must articulate their reasoning for not doing so. *Hofslien*, 439 F.3d at 376–77. The ALJ's reasoning should be based on the relevant factors applied to all medical opinions, including the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

In this case, the ALJ analyzed several opinions by Drs. Allman and Filipowicz, as well as those of state reviewing physicians. In total, the record indicates that the ALJ evaluated about seven separate medical source opinions when determining Hatter's RFC. (R. at 26–28). The ALJ first considered Dr. Allman's March 2010 opinion, in which Dr. Allman stated that Hatter was unable to work. (R. at 26). The ALJ gave this opinion "very little weight" because the treatment notes from the office visit that day indicated that Hatter had no complaints. (*See* R. at 26, 402–

04). The next opinions the ALJ considered were those of State agency physicians that opined that Hatter's back condition was not a severe impairment. (R. at 26). He gave these opinions "very little weight" because he believed that Hatter did in fact have a severe impairment. (R. at 27). The ALJ then considered an opinion from Dr. Allman dated March 19, 2010, which the ALJ assigned "limited weight," because "the medical evidence . . . does not fully support these limitations." (R. at 27). Additionally, the ALJ gave "some weight" to the twenty-five pound lifting restriction given by Dr. Allman in December 2009. (*Id.*). Specifically, the ALJ found that Hatter was more restricted and limited to lifting no more than ten pounds. (*Id.*).

The ALJ then evaluated notes from Drs. Allman and Filipowicz made in February, March, and April 2011. (*Id.*). These opinions stated that Hatter was unable to work due to chronic back pain and his back surgery. The ALJ gave these opinions "limited weight," finding that Hatter was temporarily unable to work before and after his back operation, and that he improved significantly after the surgery, noting Dr. Filipowicz's recommendation that Hatter see a physiatrist or physical therapist to improve his physical abilities. (*Id.*).

Subsequently, the ALJ "reject[ed]" Dr. Allman's March 2010 Lumbar Spine Residual Functional Capacity Questionnaire, because "it [was] inconsistent with the medical evidence of record." (*Id.*). The ALJ stated that the medical evidence available at the time Dr. Allman gave the opinion was insufficient to support the limitations Dr. Allman noted. (*Id.*). Specifically, Hatter's back pain was stable with the use of Adderall and objective diagnostic tests were generally unremarkable. (*Id*). Even though he rejected Dr. Allman's Questionnaire, the ALJ agreed with that portion of the opinion indicating a need to alternate between sitting and standing, and he incorporated it into his final RFC. (*Id.*).

11

The final medical opinion the ALJ considered was the medical source statement prepared by Dr. Filipowicz in September, 2011. (R. at 28). The ALJ adopted Dr. Filipowicz's opinions regarding Hatter's ability to lift and carry, sit, stand, and walk for one hour at a time, his need to never use his right foot to operate foot controls, and his ability to occasionally engage in postural activities except climbing ropes, ladders, and scaffolds. (*Id.*). The ALJ also found Hatter more limited than Dr. Filipowicz did regarding climbing ladders, ropes and scaffolds, and that he cannot drive or operate machinery, nor be exposed to unprotected heights, exposed flames, large bodies of water, or unguarded hazardous machinery. (*Id.*). The only portion of the opinion the ALJ did not adopt in his final RFC is Dr. Filipowicz's statement that Hatter can only sit, stand, and walk for one hour each in total in an eight-hour workday, and that he could never use his left foot to operate foot controls. (*Id.*).

Hatter argues that the ALJ "credited his own interpretation of unspecified 'objective evidence' over substantial portions from the two long-term treating experts," and that he "offer[ed] no more than vague reasons for rejecting the opinions provided by the treating physicians." (DE 11, at 10). The Court is not persuaded, and finds that substantial evidence supports the ALJ's decision. Initially, the ALJ noted Hatter's long history of back pain and that it was well controlled with the use of prescription medicine up until 2010. (R. at 25). He then discounted Dr. Allman's March 2010 opinion that stated Hatter was unable to work because the records from the same office visit state that Hatter had no complaints regarding his lower back. (R. at 26). The ALJ also gave limited weight to Dr. Allman's second March 2010 statement regarding Hatter's ability sit, stand, and walk because this opinion was prepared one year before Hatter's back operation, and post-operative notes indicate that Hatter's ability to walk and move improved significantly after the operation. (R. at 27). Additionally, the ALJ discounted Dr.

Allman's Lumbar Spine Residual Functional Capacity Questionnaire, completed in March 2010, because at the time of the report, Hatter's pain was constant and unchanging, and the objective medical findings were unremarkable. (*Id.*). In his opinion, the ALJ noted that Hatter was unable to work before and after his March 2011 operation, but found that this restriction was only temporary due to his post-operative improvement, and buttressed by Dr. Filipowicz's recommendation that Hatter begin physical therapy. (*Id.*). Finally, the ALJ adopted the majority of Dr. Filipowicz's September 2011 medical source statement in his final RFC, discounting only that portion that was not substantiated by the record. Throughout his opinion, the ALJ referenced the relevant factors applied to medical opinions, including the length, nature, and extent of the treatment relationships, the frequency of examinations, Dr. Allman's and Dr. Filipowicz's specialties, the objective medical tests performed, and the overall consistency and support for the physician's opinion. In short, the Court finds that the ALJ reasonably articulated his reasons for not assigning Dr. Allman's and Dr. Filipowicz's numerous opinions controlling weight.

**2. *The ALJ's credibility determination was not patently wrong.***

In addition to disputing the ALJ's assessment of Dr. Allman's and Dr. Filipowicz's medical opinions, Hatter also challenges the ALJ's credibility determination, asserting that he applied the wrong legal standard in assessing Hatter's credibility. ALJs are in a special position to hear, see, and assess witnesses, so their credibility determinations are given special deference and will only be overturned if they are patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012). An ALJ's credibility determination will only be considered patently wrong when it lacks any explanation or support. *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

"Patently wrong" is a high burden. *Turner v. Astrue*, 390 Fed. Appx. 581, 587 (7th Cir. 2010). "In analyzing an ALJ's opinion for such fatal gaps or contradictions, we give the opinion a commonsensical reading rather than nitpicking at it." *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2013) (internal citations omitted). Furthermore, "careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." SSR 96-8p. Claimants are responsible, however, for providing medical evidence showing how the impairments affect their functioning. *See* 20 C.F.R. §§ 404.1512, 416.912.

In assessing a claimant's subjective symptoms, particularly pain, the ALJ must follow a two-step process. SSR 96-7p. First, the ALJ must determine whether a medically determinable impairment exists that can by shown by acceptable medical evidence and can be reasonably expected to produce the claimant's pain or other symptoms. *Id.* Second, after showing an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must evaluate the intensity, persistence, and limiting effects of the impairment to determine the extent to which the symptoms limit the claimant's ability to work. *Id.* Whenever a claimant's statements about the symptoms and limitations of their impairment are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on consideration of the entire case record. *Id.*

Hatter's main claim is that he suffers from low back pain that radiates into his legs. In determining the credibility of Hatter's testimony regarding the symptoms associated with his pain, the ALJ concluded that his medically determined impairments could reasonably be expected to cause the symptoms he alleged in his testimony. (R. at 25). The ALJ found, however,

that his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [were] inconsistent with the above [RFC]." (*Id.*). Hatter contends that the ALJ improperly evaluated the consistency of his testimony against the RFC instead of the evidence in the record. As Hatter correctly states, in *Bjornson v. Astrue*, the Seventh Circuit rejected an ALJ's use of the exact same boilerplate language used in this case. 671 F.3d 640, 644 (7th Cir. 2012). The court in *Bjornson*, however, criticized the ALJ for not linking his conclusion to the evidence in the record. *See* 671 F.3d at 645. Moreover, even though the ALJ used boilerplate language, this alone "does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination." *Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013).

Hatter identifies two separate grounds for which he claims the ALJ erred in determining his credibility. First, he argues that the ALJ focused on medical records before his alleged onset date and then cherry-picked later medical records to support his credibility finding. (DE 11, at 15). Next, he argues that the ALJ erred by improperly basing the credibility finding on Hatter's apparent lack of discomfort at the disability hearing. (DE 11, at 16). Both of these points are without merit.

The ALJ began his credibility determination by focusing on Hatter's testimony regarding his activities of daily living and his functional limitations, noting that Hatter is able to drive, check e-mail, help with chores, and help his children with homework. (R. at 25). The ALJ then discussed Hatter's history of low back pain stemming from a previous injury. (*Id.*). Although Hatter alleged a disability onset date of November 2008, and stated at the hearing that his pain level was about the same from 2008 to 2011, the ALJ noted that the medical records indicate that Hatter's low back pain was controlled and generally stable with the use of Adderall until 2010.

(*Id.*). He also considered the objective tests and exam results before Hatter showed a need for surgery in March 2011. (R. at 26). For example, the ALJ cited an "unremarkable" January 2010 physical consultative exam, as well as normal x-ray, EMG, and nerve conduction studies of his legs performed in June, 2010. (*Id.*). The ALJ also discussed the Third Party Function Report completed by Hatter's wife, giving it "some weight," and disregarded those parts that were inconsistent with the RFC, and noted that Hatter's wife may not be entirely objective in her analysis. (R. at 28).

Additionally, the ALJ mentioned Hatter's appearance during the hearing, noting that Hatter did not appear "overly uncomfortable during the hearing," and that after Hatter switched from sitting to standing, he "appeared comfortable while standing." (*Id.*). Contrary to Hatter's assertion, the Seventh Circuit "ha[s] repeatedly endorsed the role of [ALJ] observation in determining credibility . . . ." *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000). Moreover, if an ALJ's observation was "one of several factors that contributed to the [ALJ]'s credibility determination, we cannot say this rendered that judgment 'patently wrong.'" *Id.* As noted above, the ALJ discussed the relevant medical and opinion evidence, including his observations of Hatter, and concluded that Hatter's testimony regarding the limiting effects of his symptoms was not credible. (R. at 25). Moreover, he accommodated Hatter's impairments by limiting him to sedentary work. Thus, the ALJ considered multiple factors in arriving at his credibility determination, and his opinion is not patently wrong.

In sum, the ALJ articulated the specific reasons he discounted Hatter's testimony, including his activities of daily living and his medical history. This Court will not reweigh the record evidence and substitute its judgment for that of the ALJ, as Hatter invites. *See Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997). The ALJ's reasons are properly supported by record

evidence and are sufficiently specific to make clear the weight given to Hatter's testimony and the specific reasons for that weight. *See* SSR 96-7p. Therefore, the ALJ's credibility determination did not lack explanation or support, and so is not patently wrong, and will be upheld. *See Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir. 2013); *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

**E. Conclusion**

The Court finds that the ALJ's decision was supported with substantial evidence and free of legal error. Therefore, Hatter's motion to reverse or remand is DENIED. This Court AFFIRMS the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is instructed to term this case and enter judgment in favor of the Commissioner.

SO ORDERED on October 7, 2013.

    s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE